Filed 7/20/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of G.E. and I.D. | |
| G.E.,<br><br>　　　Appellant,<br><br>　　　v.<br><br>I.D.,<br><br>　　　Respondent. | D085597<br><br>(Super. Ct. No. 23FL005651E) |

APPEAL from an order of the Superior Court of San Diego County, Charles E. Bell, Jr., Judge. Reversed and remanded with instructions.

O'Melveny & Myers, David L. Kirman, Arsalan A. Memon, Josh Cayetano, Gregory F. Jacob, Molly B. Shuminer; Family Violence Appellate Project, Shuray Ghorishi, Jodi Lewis, and Jennafer Dorfman Wagner for Appellant.

I.D., in pro. per., for Respondent.

I

INTRODUCTION

G.E. (Wife) appeals a family court order dismissing her petition for a domestic violence restraining order (DVRO) and terminating a domestic

violence temporary restraining order (DVTRO) against her husband, I.D. (Husband), under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.; DVPA).[1]  The court entered the dismissal and dissolution order during a contested evidentiary hearing on the DVRO petition.

Prior to the challenged ruling, Wife presented extensive testimony that Husband struck her and the couple's minor child on several different occasions, threatened to kill them, routinely said he would have her deported to her home country of Nigeria, and strictly controlled her finances and social relationships.  Notwithstanding this troubling evidence of domestic violence, the court dissolved the DVTRO and summarily dismissed the DVRO petition, without addressing its merits, for docket management reasons.  In the court's view, an outright dismissal of the DVRO petition was warranted because both parties did not fully complete the presentation of their cases within the two court days allotted to them for the DVRO hearing.

The family court manifestly abused its discretion by abruptly dismissing the DVRO petition without resolving it on the merits.  When it dismissed the DVRO petition, the court acted without statutory authority and exceeded the bounds of its inherent authority to control the litigation before it.  The court also erred when it terminated the DVTRO that protected Wife and her child from their alleged abuser, as Wife had received no advance notice that the court might terminate the DVTRO.  The court's actions are especially worrying because "[d]omestic violence is a grievous problem in today's world, and its victims often have few places to turn.  The courts must be sensitive to allegations of domestic violence, root out the truth

_____

[1]     Further undesignated statutory references are to the Family Code.

2

in each case, and protect victims when possible.  Victims should be guided through our judicial system, not herded." (*Monterroso v. Moran* (2006) 135 Cal.App.4th 732, 738.)  Here, the court not only herded an alleged victim through the judicial system; it closed the courthouse door to her altogether.

Because the family court abused its discretion, we reverse the order dismissing Wife's DVRO petition and dissolving the DVTRO.  We remand the matter with instructions that the family court reinstate the DVTRO and conduct further proceedings on the DVRO petition.

## II

## BACKGROUND[2]

Husband and Wife immigrated to the United States from their home country of Nigeria.  They met in Nigeria in 2011, got married in 2013, and had a son, T.I-D. (Child), in 2014.  Husband came to the United States in 2016 or 2017, and Wife and Child joined him in San Diego in 2021.

A. *DVRO Request*

On April 21, 2023, Wife filed a pro se DVRO petition seeking protection for herself and Child from Husband.  She alleged Husband was verbally and physically abusive throughout the marriage and had become increasingly abusive since she and Child immigrated to the United States.  She described multiple examples of abuse, including an instance in which Husband allegedly hit her to the point of unconsciousness.  She also averred that he controlled her finances, prohibited her from having personal friendships with

---

[2]     Husband filed a motion asking that we strike or disregard certain factual assertions in Wife's opening appellate brief that, in his view, are unsupported by proper record citations.  We have reviewed the assertions at issue and conclude they are adequately supported by their corresponding record citations.  Therefore, we deny Husband's motion.

others, and threatened to have her deported to Nigeria. Husband opposed the DVRO petition and denied the allegations of abuse and improper control.

On the same day Wife filed her DVRO petition, the family court granted sole legal and physical custody of Child to Wife. It also issued a DVTRO prohibiting Husband from abusing Wife or Child, ordering Husband to stay at least 100 yards away from Wife and Child, and directing Husband to move out of the family home. The court subsequently modified the DVTRO to grant Husband supervised visitation rights.

Husband and Wife retained separate legal counsel. When Wife's counsel substituted into the case, he filed a declaration estimating that the evidentiary hearing for the DVRO petition likely would require two court days.

The family court scheduled an evidentiary hearing for the DVRO petition, and then continued the hearing several times.[3] Despite counsel's estimate of a two-day trial, the then-assigned judge (Hon. Christopher Morris) only set the matter for a half-day hearing on April 11, 2024 (further

---

[3] The court continued the evidentiary hearing because Wife sought an extension to retain legal counsel, the original judge assigned to the matter recused himself from the case, Wife's counsel was unavailable on one of the hearing dates, the parties stipulated to another continuance, and Wife's counsel was ill on yet another hearing date. With each continuance, the court extended the duration of the DVTRO.

dates are to the year 2024, unless otherwise noted).  At some point prior to the hearing, the case was reassigned to the Honorable Charles E. Bell, Jr.[4]

B. *DVRO Hearing (April 11)*

At the outset of the DVRO hearing, the family court expressed doubt that a half day would afford the parties sufficient time to present their cases, stating, "I have a feeling that you're going to need more time than half a day, I would imagine."  Wife's counsel replied that the judge previously assigned to the case had set the matter for a half-day hearing, and he agreed it could not be completed in a half day.  The court responded, "So I just wanted to plant that seed with both of you. … I am conscious of that."

The court adjudicated the parties' motions in limine, again suggested it "would be difficult to get everything done in a half day," and then asked Wife's trial counsel for his estimate concerning the expected duration of the hearing.  Wife's counsel estimated the parties would need two full days in total, and Wife would need a half day for her case in chief.  Husband's counsel estimated he would also need half a day to present his case.  In response, the court said, "Okay."

Wife then took the witness stand during her case in chief.  Her direct examination testimony lasted about an hour and a half on April 11 (from 9:36 a.m. to 10:28 a.m., and then from 10:47 a.m. to 11:30 a.m.).

While on the witness stand, Wife testified that Husband did not yell at her or make her fear for her safety in the early stages of their relationship.

---

[4]    Wife requests judicial notice of a confidential report prepared by a family court services counselor, dated June 21, 2023, which purports to memorialize a family court services conference conducted separately with Husband and Wife on June 13, 2023.  We deny the request for judicial notice of the confidential report, as it is unnecessary to the disposition of the appeal.

5

However, he began yelling at her after Child was born. Wife testified Husband first yelled at her because she told him that he was spending too much money and needed to support Child financially. According to Wife, Husband responded by dragging her into another room and telling family members in that room to admonish her that she had no right to talk to him about money. Wife testified that Husband yelled at her and called her a bad wife on several other occasions while they lived in Nigeria.

Wife testified that Husband controlled her activities and movements as well. She said he banned her from leaving home without his permission. On one occasion, he allegedly forbade her from going to a family member's funeral until other family members intervened and convinced him to allow her to attend. Wife testified that Husband closely controlled what she bought, and she had to comply or "there [would be] trouble."

Wife also described an incident of physical abuse in Nigeria. She testified Husband had lost his job, and she again told him he was spending too much money. In response, Husband allegedly took her phone away, slapped her face with his open palm, returned her phone to her, and left the family home. He allegedly returned twenty minutes later and began striking her with his fist until she lost consciousness. When she regained consciousness, her eyes were bruised, and Husband would not allow her to go to the hospital.

Husband thereafter immigrated to the United States, and Wife did not see him again until she and Child came to live with him in San Diego four or five years later. After a few months of peaceful cohabitation, Husband allegedly began yelling and shouting at Wife again. Wife testified that Husband once got angry with her when she did not answer his sister's phone calls, so he yelled, shouted, cursed, called her disrespectful, and said he had

6

"picked [her] from the gutter." According to Wife, Husband verbally abused her every two or three weeks throughout the year 2022. During these bouts of verbal abuse, he allegedly threatened to kill her, take Child away from her, and have her deported to Nigeria.

Wife testified about physical violence Husband allegedly committed against Child as well. She claimed Husband flogged Child with a belt in January 2022 for behaving poorly at school, which resulted in a report to Child Welfare Services (CWS). According to Wife, Husband coached her and Child to deny the abuse, and threatened her that she could be jailed or deported to Nigeria if she disclosed the abuse. When CWS interviewed Wife and Child, they denied the abuse. CWS ultimately found the allegation of physical abuse against Child was not substantiated.

Wife described two additional instances from March 2023 in which Husband allegedly struck Child. In the first incident, Child threw a slipper at someone, which caused Husband to strike Child's head, face, and body with his hand. During the second incident, Child closed his bedroom door to keep someone else out of the room, so Husband hit and threatened to kill Child. Wife claimed Husband also hit Child for poor school reports and threatened to kill Child if Child disclosed Husband's abuse of Wife.

Wife next described an incident of physical abuse Husband allegedly committed against her three days before she filed her DVRO petition. On April 18, 2023, Wife and Husband had a disagreement about their income tax returns. Wife claimed Husband left the family residence, returned home late at night, and woke her up. According to Wife, Husband yelled at her, pulled her hair and ear, and hit her face and ear with his hand and his phone. Wife used her own phone to make an audio recording of the incident, in which the

7

persons on the recording alternately speak in both Igbo (a language primarily spoken in Nigeria) and English.

At this point in the direct examination, the family court paused Wife's testimony and discussed housekeeping matters with the parties. The court asked the parties for an updated estimate on trial length and Wife's counsel stated he would need another two hours for Wife's case, excluding any time Husband might need to cross-examine Wife. Husband's counsel said he would require "a full day." The court opined that the trial "was really a two day," and both parties' counsel reiterated they had originally asked the court for a two-day trial. The court replied, "I'll respect that. I'll respect that. I won't hold that against you on that one."

The court then set the matter for a continued full-day hearing on August 29.

C. *DVRO Hearing (August 29)*

At the start of the continued hearing, the court admitted into evidence the 16-minute and 39-second audio recording from the incident of physical abuse arising from the parties' disagreement about their tax returns.

On the recording, Wife can be heard saying, "Why are you hitting me," "Please don't lay your hands on me anymore," and, "Stop hitting me, it's hurting me." In response, Husband says, "And if I lay hands on you, what would happen?" Wife then repeats that Husband is hurting her, and he replies, "Do your worst. … Get the phone, call the cops. … I said get the phone and call the cops, silly fool." Shortly after, Husband says, "You haven't seen any hurt; you will feel the real hurt." Wife repeatedly asks Husband to stop hitting her, and he responds, "[Wife] thinks that I'm a fool, let her do her worst, I brought her to America, I will send her back." Another man can be

8

heard on the recording saying, "See how your son is watching you," and, "Please don't touch her."

After the court admitted the audio recording, Wife continued her testimony. She stated that Husband struck her with a closed fist, punched her, squeezed her ear, and pulled her around during the incident that was captured on the recording. She also said Child was present for the abuse.

Wife next testified about abuse that allegedly took place on April 20, 2023, one day before she filed her DVRO petition. She testified that she and Husband got into a disagreement about paperwork concerning childcare services. During the argument, Husband allegedly yelled and told Child that Wife was "going to feel [his] presence," he was "going to deal with" her, and she would "regret ever knowing" him. Wife reported the incident to the police and obtained a criminal protective order against Husband.

Thereafter, Wife completed her direct examination. In total, her direct examination took less than one hour during the August 29 hearing (from 9:28 a.m. to 10:23 a.m.), and two and a half hours across both hearing days.

Husband's counsel then cross-examined Wife. On cross-examination, Husband's counsel elicited testimony from Wife that Husband remitted thousands of dollars per year to her while she lived in Nigeria, she had her own bank account, Husband introduced her to someone who helped her gain employment in the United States, and Husband made regular support payments to her during the DVRO proceedings—all to counter Wife's narrative that Husband curtailed her financial freedom. Husband's counsel also elicited testimony from Wife that she lied to CWS when she denied that Husband had abused Child in January 2022. The cross-examination was at times combative and mired in objections, many of which were sustained. In total, it lasted about two and a half hours.

9

Wife's counsel then conducted a brief redirect examination of Wife that lasted about 15 minutes. Following the redirect, Wife rested her case.

After Wife exited the witness stand, Husband's counsel conducted a direct examination of Husband for about 35 minutes. During the direct examination, Husband testified about his schooling and employment history, his immigration to the United States, his asylum proceedings, and his financial support of Wife. Husband's counsel did not ask him questions pertaining to Wife's allegations of physical or verbal abuse.

At the end of the hearing day, the family court set the matter for a continued half-day evidentiary hearing the following day. The court also opined that no further continuances or extensions would be granted.

D. *DVRO Hearing (August 30)*

The final half-day evidentiary hearing got off to a rocky start. Due to an apparent misunderstanding between the parties' counsel about which party would arrange for court reporting services, a court reporter did not arrive for the scheduled start of the hearing. Counsel belatedly secured a court reporter, and the reported portion of the hearing began after a 90-minute delay.

At the start of the reported portion of the hearing, Husband's counsel orally moved to dismiss "the underlying restraining order" (presumably referring to the DVTRO), as well as "the entire action," under Code of Civil Procedure section 533, a statute that permits a court to modify or dissolve an injunction or temporary restraining order when, among other circumstances, the ends of justice would be served by the modification or dissolution.

In support of his request, Husband's counsel presented a wide variety of procedural and merits-based arguments. In particular, he argued the ends of justice would be served by dismissal because: (1) Wife's counsel had failed

10

to arrange for the court reporter to appear at the August 30 hearing; (2) Husband had been subject to the DVTRO throughout the duration of the case; (3) Husband had incurred significant costs for supervised visitations with Child; (4) according to Husband's counsel, Wife's counsel had fabricated an illness at a prior court hearing, which resulted in a hearing continuance; (5) Husband had not violated the DVTRO; (6) Husband was not prosecuted for the incident on April 20, 2023 (the fight that prompted Wife to file a police report); and (7) Wife's allegations of abuse were not credible.

Wife's counsel argued against Husband's oral request, asserting that: (1) Code of Civil Procedure section 533 does not apply to DVRO proceedings; (2) there was a genuine misunderstanding between counsel about which party would procure the court reporter for the hearing; (3) DVRO proceedings involving credible allegations of abuse should be decided on the merits; and (4) there was in fact evidence that Husband had violated the DVTRO.

After the parties presented these arguments, the family court provided a tentative ruling to dismiss the DVTRO in the interests of justice. In doing so, the court summarized the "restraints placed upon" Husband since the DVTRO was originally issued on April 21, 2023. The court stated the DVTRO did "what it [was] supposed to do," and had "allowed for a cooling off period between the parties to ensure that there is not a continuation or repeat of [the] conduct." The court also opined that the parties had taken "a day and a half nearly to do one witness," admonished counsel "[t]here isn't unlimited time," and stated that it was "not the court's responsibility to control how practitioners conduct their cases."

Thereafter, the court conducted a swift direct examination of Husband consisting of a mere four questions. The court asked Husband whether Wife had "reason to fear [him] contacting her in the future outside of any court

11

ordered parenting plan," and he replied, "No." The court then asked him if he was "voluntarily stating on the record that [he] will not, as defined by the Domestic Violence Protection Act, [do] any acts that fall under [the definition of] domestic violence … towards [Wife] in the future," and Husband replied, "I do." Next, the court asked Husband how he would conduct himself if he came across Wife in a court-ordered exchange of Child, or out in the world, and Husband replied, "peacefully without any problem." Finally, the court asked if Husband knew that Wife had a right to bring a restraining order against him if she needed one in the future, and Husband said, "I do."

Based on this testimony, the court found there was not a "reasonable probability of future unlawful violence or any act under the Domestic Violence Prevention Act to necessitate the [temporary] restraining order remaining in place." Therefore, the court dissolved the DVTRO without prejudice. Shortly after, the court clarified that it was dismissing the entire DVRO action "in the interest of justice," and not merely dissolving the DVTRO, because "[n]either [side] ha[d] completed [its] case in the time allotted by the court."[5]

---

[5] At a subsequent hearing, the court reiterated that it had dismissed the DVRO petition because "the attorneys representing the parties failed to comply with the two-day time estimate for the evidentiary hearing." The court noted that its dismissal was "not based on the court finding that [the] 'acts shown at [the] noticed hearing [were] insufficient to support the [domestic violence restraining] order.' "

III

DISCUSSION

A. *Domestic Violence Prevention Act*

The DVPA was enacted "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) To this end, the DVPA "authorizes ex parte restraining orders (DVTROs) pending a hearing (§§ 6320–6327) and long-term restraining orders (permanent DVROs) issued after notice and hearing (§§ 6340–6347)" to enjoin specific acts of abuse. (*In re Marriage of A.M. & R.Y.* (2025) 110 Cal.App.5th 1115, 1125 (*A.M. & R.Y.*).)

"A DVTRO must be issued or denied on the same day the application is submitted to the court, unless the application is filed too late in the day to permit effective review, in which case it must be issued or denied the next court day. (§ 6326.) The noticed hearing on a permanent DVRO must be held within 21 days or, with good cause, within 25 days. (§§ 242, subd. (a), 6327.) The hearing may be continued once as a matter of right at the respondent's request, and it may also be continued for good cause at either party's request or on the court's own motion. (§§ 245, subds. (a), (b), 6327.) If the court grants a continuance of the hearing, any DVTRO remains in effect until the continued hearing, unless otherwise ordered. (§§ 245, subd. (c), 6327.)" (*A.M. & R.Y., supra*, 110 Cal.App.5th at pp. 1125–1126.)

Under the DVPA, the family court may issue a restraining order "to prevent acts of 'domestic violence [or] abuse' (... § 6220) 'if an affidavit or testimony ... shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse' (... § 6300, subd. (a))." (*In re Marriage of M.P. & M.C.* (2025) 116 Cal.App.5th 1096, 1106.) "The DVPA requires a showing of past

13

abuse by a preponderance of the evidence." (*K.T. v. E.S.* (2025) 109 Cal.App.5th 1114, 1127.) The court must also "consider the totality of the circumstances in determining whether to grant or deny a petition for relief." (§ 6301, subd. (d); see *R.R. v. C.R.* (2026) 117 Cal.App.5th 1262, 1272.) The court may impose a DVRO for a duration of up to five years, and the DVRO may be renewed, "upon the request of a party, either for five or more years, or permanently, at the discretion of the court, without a showing of further abuse since the issuance of the original order." (§ 6345, subd. (a).)

As relevant here, the DVPA defines "domestic violence" as "abuse" perpetrated against a "spouse or former spouse," or a "child of a party." (§ 6211, subds. (a), (e).) The DVPA defines "abuse," in turn, to mean any of the following: "To intentionally or recklessly cause or attempt to cause bodily injury. … [¶] … To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another. … [¶] … To engage in any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (a).) The behavior that can be enjoined under section 6320 includes "attacking, striking, … threatening, … battering, … harassing, … or disturbing the peace of the other party." (§ 6320, subd. (a).)

" '[D]isturbing the peace of the other party' refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party," and it may include "coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty. Examples of coercive control include, but are not limited to, unreasonably engaging in any of the following: [¶] (1) Isolating the other party from friends, relatives, or other sources of support. [¶] (2) Depriving the other party of basic necessities. [¶] (3) Controlling, regulating, or monitoring the other party's movements, communications,

14

daily behavior, finances, economic resources, or access to services. [¶] [and] (4) Compelling the other party by force, threat of force, or intimidation, including threats based on actual or suspected immigration status, to engage in conduct from which the other party has a right to abstain or to abstain from conduct in which the other party has a right to engage." (§ 6320, subd. (c).)

"The DVPA constitutes 'a comprehensive statutory response to domestic violence, which the Legislature has identified as "the number one health risk among women." [Citation.] The scheme is "broad" in its intent, and each section must therefore be broadly construed to accomplish its purpose.' " (*Navarro v. Cervera* (2025) 108 Cal.App.5th 229, 238–239; see also *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 115 ["The statute should 'be broadly construed in order to accomplish [its] purpose' of preventing acts of domestic violence."].)

B. *Standard of Review*

We apply an abuse of discretion standard when reviewing a family court order pertaining to the dissolution or termination of a DVTRO. (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1505 (*Loeffler*).) We also review an order granting or denying a DVRO request for abuse of discretion. (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264.) "However, the exercise of discretion 'is not unfettered' in such cases. [Citation.] An exercise of discretion must be guided by applicable legal principles, ' "which are derived from the statute under which discretion is conferred. [Citations.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect

15

legal assumptions is not an exercise of informed discretion and is subject to reversal." ' " (*R.R. v. C.R., supra*, 117 Cal.App.5th at p. 1272.)

"Whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law, requiring de novo review." (*R.R. v. C.R., supra*, 117 Cal.App.5th at p. 1272.) Where the material facts are not subject to dispute, the interpretation of a statute likewise presents a question of law to which we apply de novo review. (*Union Bank of California v. Superior Court* (2004) 115 Cal.App.4th 484, 488.)

C. *The Family Court Erred by Dismissing the DVRO Petition*

As noted, Husband orally moved to dismiss Wife's DVRO petition under Code of Civil Procedure section 533, which states, "In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order."

The family court granted Husband's motion to dismiss the DVRO petition and stated on the record that the "dismissal [was] in the interest of justice." The court did not expressly cite the legal authority on which it relied to dismiss, and thus effectively deny, the DVRO request. However, it used language (the "interest of justice") closely resembling the statutory language of Code of Civil Procedure section 533 (the "ends of justice").

Wife contends the court erred insofar as it relied on Code of Civil Procedure section 533 to dismiss her DVRO petition. She claims the statute "does not authorize a court to dismiss an unresolved petition for an injunction—here, [Wife's] unresolved DVRO request." We agree.

16

"Unless another statute or rule applies, proceedings under the Family Code are generally governed by the standards set forth in the Code of Civil Procedure." (*Loeffler*, *supra*, 174 Cal.App.4th at p. 1503.) Further, as our court has recognized, "[a] domestic violence restraining order is a type of injunction, as it is an 'order requiring a person to refrain from a particular act.'" (*Ibid.*) Thus, Code of Civil Procedure section 533, which governs the modification or dissolution of injunctions, sets forth legal "standards for a trial court to apply when considering whether to [modify or] dissolve" a DVRO. (*Id.* at p. 1504; see also *Luckett v. Panos* (2008) 161 Cal.App.4th 77, 85 [Code of Civil Procedure section 533 "articulates three independent bases on which a modification of an injunction may be predicated—(1) change in the facts, (2) change in the law, or (3) ends of justice"].)

However, Code of Civil Procedure section 533 expresses legal standards that only apply when a court decides whether to "modify or dissolve" an *existing* injunction or temporary restraining order. As Wife correctly notes, the statute says nothing about summarily dismissing (i.e., denying) an *initial* request for an injunction like a DVRO. Because the statute, by its plain terms, only applies to changes or terminations of extant injunctions—not denials of unadjudicated requests for injunctions—we agree with Wife that the court abused its discretion insofar as it relied on Code of Civil Procedure section 533 to dismiss her DVRO request.[6] (See *Lusardi Construction Co. v. Department of Industrial Relations* (2024) 102 Cal.App.5th 1329, 1342 [" 'In

---

[6] Husband does not defend the family court's reliance on Code of Civil Procedure section 533 to dismiss the DVRO petition. In fact, he seemingly concedes error, as he admits that the statute "presupposes an existing injunctive order subject to modification or dissolution."

the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted.' "].)

The dismissal cannot be defended as a permissible exercise of the family court's inherent authority to control the litigation pending before it either. " 'It is ... well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them. [Citation.] ... "... That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation ... in order to insure the orderly administration of justice." ' " (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351 (*Elkins*).)

"This authority includes the power to supervise proceedings for the orderly conduct of the court's business and to guard against inept procedures and unnecessary indulgences that tend to delay the conduct of its proceedings. [Citation.] In this vein, the court has the power to expedite proceedings which, in the court's view, are dragging on too long without significantly aiding the trier of fact." (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 22; see *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 291 ["Unquestionably, the trial court has the power to rule on the admissibility of evidence, exclude proffered evidence that is deemed to be irrelevant, prejudicial or cumulative and expedite proceedings which, in the court's view, are dragging on too long without significantly aiding the trier of fact."].)

However, the family court in this case did not merely regulate the proceedings before it by excluding or limiting the admission of cumulative or marginally relevant evidence. Nor did it impose and enforce time restrictions for the evidentiary hearing, which it could have done by providing clear time

18

limitations at the outset, adjusting those time limitations as needed considering the realities of trial, and barring the parties from introducing additional evidence after the time limitations expired. Instead, the court *dismissed* the DVRO petition altogether without issuing any decision on the merits of the petition. The court's ruling thus amounted to a de facto summary denial of Wife's DVRO action. (See *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 335 ["an application for an order under the DVPA to restrain a person for the purpose of preventing the recurrence of domestic violence is … [citation] … essentially a 'cause of action' [citation] … and may properly be considered an independent 'lawsuit' [citation]. Thus, the denial of [an] application … operate[s] as a dismissal of [the] entire 'action' "].)

When viewed through this lens, the family court's ruling undoubtedly exceeded the bounds of its inherent authority to control the case before it. "In the absence of express statutory authority, a trial court may, under certain circumstances, invoke its limited, inherent discretionary power to dismiss claims with prejudice. [Citation.] However, this power has in the past been confined to two types of situations: (1) the plaintiff has failed to prosecute diligently [citation]; or (2) the complaint has been shown to be 'fictitious or a sham' such that the plaintiff has no valid cause of action." (*Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 915 (*Lyons*).) Further, "[t]rial courts should only exercise this authority in extreme situations, such as when the conduct was clear and deliberate, where no lesser alternatives would remedy the situation [citation], the fault lies with the client and not the attorney [citation], and when the court issues a directive that the party fails to obey." (*Del Junco v. Hufnagel* (2007) 150 Cal.App.4th 789, 799; see *Estrada v. Royalty Carpet Mills, Inc.* (2024) 15 Cal.5th 582, 601 ["our case law has

19

recognized that the inherent authority of trial courts to dismiss claims is limited"].)

None of those circumstances were present here. Husband never argued to the family court that Wife failed to diligently prosecute the DVRO proceeding or that her complaint was a sham pleading, and the court did not cite these considerations when it ordered the dismissal of her DVRO petition. There were surely less extreme measures the court could have taken to ensure the orderly administration of the case, such as barring or limiting the parties from presenting additional evidence after the August 30 hearing and simply rendering a merits decision on the record before it. Further, to the extent there was any delay in the contested evidentiary proceeding, the delay was almost entirely attributable to the parties' counsel, who questioned the two testifying witnesses, argued the motions and objections that arose at the hearing, and failed to secure a court reporter for the August 30 hearing. On this record, the court erred by summarily dismissing Wife's DVRO petition.

The family court's error is especially striking given the fact that Wife rested her case in chief after she had testified for just two and a half hours on direct examination and 15 minutes on redirect—an amount of time that was roughly equal to, or perhaps even less than, the time estimate that Wife's trial counsel gave to the court at the April 11 hearing. When Wife's counsel supplied the court with this estimate, the court did not express reservations or suggest the estimate was excessive. On the contrary, the court said, "Okay," and later added that it would not, "hold [it] against" the parties if the contested evidentiary hearing took two court days. Indeed, Husband's cross-examination of Wife and his own direct examination together consumed more time than Wife's direct and redirect examinations, and often focused on tangential issues that were not especially probative of Wife's central

allegations of abuse and excessive control.  Nevertheless, the court dismissed *Wife's* DVRO petition, which inured solely to her detriment and had no corresponding disability or negative consequences for Husband.

The family court's ruling also pays no heed to the strong public policy " 'which seeks to dispose of litigation on the merits rather than on procedural grounds.' " (*Lyons, supra*, 42 Cal.3d at p. 916; see *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395 ["When the two policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency."].)  That strong public policy takes on special importance where, as here, one of the parties has presented the court with extensive evidence that, if credited by the court, would amply justify the issuance of a protective order intended to halt further domestic abuse.  As the Legislature has explained, "[d]omestic violence is an urgent public safety and public health crisis." (§ 6309, subd. (a)(1)(A).)  To combat this scourge on society, the Legislature enacted the DVPA to "promote the health and safety of domestic violence survivors and their children," and "ensure that domestic violence survivors can seek and receive, without delay, the protection offered by the domestic violence restraining orders." (*Id.*, subd. (a)(2)(A), (B).)  Here, the family court's non-merits dismissal of Wife's DVPA petition for the sake of docket management gives little or no consideration to the broad and important protective purposes of the DVPA.

" 'We are fully cognizant of the press of business presented to the judge who presides over the Domestic Relations Department of the Superior Court ..., and highly commend his efforts to expedite the handling of matters which come before him.  However, such efforts should never be directed in such manner as to prevent a full and fair opportunity to the parties to *present all competent, relevant, and material evidence* bearing upon any issue properly

21

presented for determination. [¶] Matters of domestic relations are of the utmost importance to the parties involved and also to the people of the State of California.' " (*Elkins, supra*, 41 Cal.4th at pp. 1357–1358; *Vinson v. Kinsey* (2023) 93 Cal.App.5th 1166, 1180 ["the DVPA's broad protective purpose … demands, and [petitioner] was entitled to, full consideration of her case"].)

The family court here lost sight of these fundamental principles, failed to consider the broad protective purpose of the DVPA, and exalted expediency over justice when it summarily dismissed Wife's petition for a DVRO based on its own docket management concerns. This constituted reversible error. Accordingly, we reverse the order dismissing the DVRO petition, and we remand the matter for further proceedings on the DVRO petition.

D. *The Family Court Also Erred by Dissolving the DVTRO*

When the family court summarily dismissed the DVRO petition, the court also dissolved the DVTRO protecting Wife and Child from Husband. The court did not specify the statutory authority for its dissolution ruling, but Husband relied exclusively on Code of Civil Procedure section 533 when he moved to dissolve the DVTRO. We conclude the family court erred insofar as it relied on Code of Civil Procedure section 533 to dissolve the DVTRO.

As noted, Code of Civil Procedure section 533 permits a court, "on notice," to modify or dissolve an injunction or temporary restraining order in specified circumstances. However, Wife did not receive any advance notice that the family court would terminate the DVTRO. Instead, Husband orally moved the court to dismiss "the underlying restraining order" at the outset of the hearing, and the court granted the motion from the bench almost immediately afterwards. These surprise developments at the hearing deprived Wife of a meaningful opportunity to marshal evidence and prepare a reasoned opposition to the requested relief.

22

Because Wife received no notice that the DVTRO would be terminated, we conclude the court erred insofar as it relied on Code of Civil Procedure section 533 to dissolve the DVTRO at the August 30 hearing. Further, the court did not purport to base its termination decision on any other source of authority, and Husband does not rely on any other legal authority to defend the court's DVTRO ruling on appeal. (See *Malinowski v. Martin* (2023) 93 Cal.App.5th 681, 696 [section 245, subdivision (c), allows a court to modify or terminate a DVTRO when it continues a DVRO hearing, but "due process may require a trial court to take evidence at a noticed hearing consistent with section 533 in order to resolve disputed factual matters essential to the court's reasonable exercise of discretion to modify or terminate a DVTRO"].)

Because the family court seemingly relied on Code of Civil Procedure section 533 to justify its termination ruling, yet Wife received no notice that the DVTRO would be terminated, we conclude the court abused its discretion when it terminated the DVTRO at the August 30 hearing.

IV

DISPOSITION

The order dismissing G.E.'s petition for a domestic violence restraining order and terminating the domestic violence temporary restraining order, dated August 30, 2024, is reversed. The matter is remanded with instructions that the family court reinstate the domestic violence temporary

23

restraining order and conduct further proceedings on the petition for a domestic violence restraining order.  G.E. is awarded her appellate costs.


McCONNELL, P. J.

WE CONCUR:


BUCHANAN, J.


CASTILLO, J.


24